# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | |
|---|---|
| PORTUS SINGAPORE PTE LTD, and PORTUS PTY LTD., | |
| Plaintiffs, | |
| v. | CIVIL ACTION NO.  6:20-cv-605 |
| ADT, LLC | **JURY TRIAL REQUESTED** |
| Defendant. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Portus Singapore Pte Ltd. and Portus Pty Ltd. ("Plaintiffs") file this Complaint for Patent Infringement against ADT LLC dba ADT Security Services ("ADT" or "Defendant"), and states as follows:

## THE PARTIES

1.     Plaintiff Portus Singapore Pte Ltd. is a company organized under the laws of the Republic of Singapore.

2.     Plaintiff Portus Pty Ltd. is a subsidiary of Portus Singapore Pte Ltd., and a company organized under the laws of Australia.

## JURISDICTION AND VENUE

3.     This Court has exclusive subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338(a) on the grounds that this action arises

under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*., including, without limitation, 35 U.S.C. §§ 271, 281, 284, and 285.

4.    ADT is registered to do business in Texas and can be served via its registered agent, CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, TX 75201-3136.

5.    ADT maintains a permanent physical presence within the Western District of Texas and has one or more regular and established places of business within the district.

6.    ADT maintains a regular and established place of business within the Western District of Texas at 1817 W Braker Lane, Austin, TX 78758.

7.    ADT maintains a regular and established place of business within the Western District of Texas at 12305 Mercantile Ave, El Paso, TX 79928.

8.    ADT has placed infringing products, like ADT Pulse, into the stream of commerce knowing or understanding that such products would be used in the United States, including in the Western District of Texas.

9.    ADT has used ADT Pulse in the Western District of Texas, at least through its own use or testing.

10.    ADT has used ADT Pulse in the Western District of Texas, at least through demonstration including through demonstrations during sales or installation.

11.     This Court has personal jurisdiction over ADT at least because ADT is registered to do business in Texas, has one or more places of business within the District, has made, used, offered to sell and sold the accused products within the District thus committing acts of infringement within the District, and placed infringing products, like ADT Pulse, into the stream of commerce knowing or understanding that such products would be used in the United States, including in the Western District of Texas.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1400(b) on the grounds that Defendant has committed acts of infringement in the district and has a regular and established place of business in the district.

## THE '526 PATENT

13.     Portus Singapore Pte Ltd. is the owner by assignment from the inventors, Charles Cameron Lindquist and Timothy John Lindquist, of all right, title, and interest in and to United States Patent Number 8,914,526 (the "'526 Patent"), titled "Local and Remote Monitoring Using a Standard Web Browser" including the right to sue for all past infringement.

14.     Portus Pty Ltd. is the exclusive licensee of the '526 Patent.

15.     Attached to this Complaint as Exhibit A is a true and correct copy of the '526 Patent.

16.     The '526 Patent issued from United States Patent and Trademark Office application no. 09/868,417, which was based on a PCT application no. 99/01128, which was filed on December 17, 1999.   That PCT application was based on Australian patent application (PP 7764) filed on December 17, 1998.

17.     The Patent Office issued the '526 Patent on December 16, 2014, after a full and fair examination.

18.     The '526 Patent is valid and enforceable.

19.     The '526 Patent describes a home security and control system for monitoring and controlling an external environment such as a home environment comprising: an Internet browser connectable to an extranet; an extranet located external to the home environment and accessible via the Internet browser; a communications server located in the extranet and adapted to interconnect on demand with one of a series of connection gateways located in predetermined home environments; and a connection gateway located in the home environment adapted to control and/or monitor the operation of at least one security device in the home environment; wherein upon accessing a predetermined address by the Internet browser on the extranet, the communications server connects to a predetermined one of the connection gateways to control and/or monitor the operation of the security device.



20.     The inventors of the '526 Patent, recognized that home automation and security systems had become more advanced and that the "[u]sers often have a common need to control and monitor such systems both locally and remotely." '526 Patent at 1:35-36.  However, despite the growing complexity of these systems, users "generally must resort to non-visual monitoring and control mechanisms for remote operation [such as] by telephone through codes entered via a telephone handset."  *Id*. at 1:40-41.

21.     The '526 Patent provides several advantages over the prior art such as: a) allowing remote control of a home security system through operation of a website rather than through the cumbersome automated systems and choices provided via telephone; b) providing a geographically independent standard interface for remote connection to a home security system that is universally accessible and not platform or hardware dependent.

22.     A person of ordinary skill in the art at the time of the invention would have recognized that the steps (and combination of steps) claimed in the '526 Patent were, at the time of invention, unconventional and describe remote monitoring of home security and automation systems in a way that, at the time of the invention, was not routine.

23.     A person of ordinary skill in the art at the time of the invention would have understood that, at the time of the invention, there was no conventional manner in which to use a web browser remotely to monitor and control home automation and security systems.  A skilled artisan, at the time of the invention, would have recognized the problem that such remote monitoring at the time of the invention could only be accomplished via cumbersome telephone-based input and automation systems.

24.     The '526 Patent provides technical solutions to this problem not solved in the prior art.  By using a web browser so that "when a customer connects to their

home, their home effectively appears to them as a website, with all devices, security

and otherwise, accessible for monitoring and control." '526 Patent at 2:49-52.

    25.    Claim 1 of the '526 Patent recites:

1. A system for remote access of home networks in respective user premises
comprising:
    [a] an Internet browser hardware device including a processor running an
    Internet browser;
    [b] an extranet located external to said user premises and accessible via said
    Internet browser;
    [c] a plurality of connection gateways each comprising a hardware
    processor, each of at least a subset of which is located in a respective one of
    the user premises and is part of the respective home network of the
    respective user premises; and
    [d] at least one communications server that each comprises a hardware
    processor located in said extranet and adapted to interconnect on-demand
    with said connection gateways;
wherein:
    [e] each of the at least the subset of the plurality of connection gateways is
    accessible by the at least one communications server and is
    communicatively coupled to one or more networked components of the
    respective home network in which the respective connection gateway is
    located, the at least one communications server not being communicatively
    coupleable to the one or more networked components of the respective home
    network; and
    [f] responsive to user-input of a Uniform Resource Locator (URL) in
    accordance with which said Internet browser accesses a predetermined
    address on said extranet to which address the URL corresponds, in which
    accessing said Internet browser provides authorization data, one of said at
    least one communications server subsequently:
        [f][1] determines which one of said home networks in which one of said
        connection gateways is located said authorization data indicates
        authority to at least one of control and monitor; and
        [f][2]creates a new communications session between said
        communications server and said one of said connection gateways located
        in said determined one of said home networks to at least one of control

and monitor operation of at least one service in said home network, by which communications session the extranet:

    [f][2][i] obtains information contained within the home network from the connection gateway of the determined home network; and [f][2][ii] serves a webpage to the Internet browser via which the information from the connection gateway of the determined home network is provided to said Internet browser.

26.    A person skilled in the art at the time of the invention would have understood that the system of using an Internet browser; an extranet external to the user premises and accessible via the Internet browser; a plurality of connection gateways that are part of the home network; and a communications server located in the extranet and adapted to communicate on-demand with the connection gateways was not, at the time of the invention, conventional, well-understood, nor routine.

27.    A person of ordinary skill in the art at the time of the invention would have understood that the system described in claim 1 of the '526 Patent was not, at the time of the invention, conventional, well-understood, or routine.

28.    A person skilled in the art at the time of the invention would have understood that the claims recite steps and structural limitations operating in an unconventional manner to achieve an improved operation of home security and automation.

29.    These technological improvements provide greater cost savings and efficiencies in allowing remote monitoring of a home security and automation systems through a web browser.

30.     The novel use and arrangement of the specific system recited in the '526 claims were not well-understood, routine, nor conventional to a person skilled in the relevant field at the time of the inventions.

## THE '097 PATENT

31.      Portus Singapore Pte Ltd. is the owner by assignment from the inventors, Charles Cameron Lindquist and Timothy John Lindquist, of all right, title, and interest in and to United States Patent Number 9,961,097 (the "'097 Patent"), titled "System for Remote Access of a User Premises" including the right to sue for all past infringement.

32.     Portus Pty Ltd. is the exclusive licensee of the '097 Patent.

33.     Exhibit B is a true and correct copy of the '097 Patent.

34.     The '097 Patent issued from application no. 14/536,784 filed on November 10, 2014.

35.     The Patent Office issued the '097 Patent on May 1, 2018, after a full and fair examination.

36.     The '097 Patent is valid and enforceable.

37.     The '097 Patent provides several advantages over the prior art such as: a) allowing remote control of a home security system through operation of a website rather than through the cumbersome automated systems and choices provided via telephone; b) providing a geographically independent standard interface for remote

connection to a home security system that is universally accessible and not platform or hardware dependent.

38.     A person of ordinary skill in the art at the time of the invention would have recognized that the steps (and combination of steps) claimed in the '097 Patent were, at the time of invention, unconventional and describe remote monitoring of home security and automation systems in a way that, at the time of the invention, was not routine.

39.     A person of ordinary skill in the art at the time of the invention would have understood that, at the time of the invention, there was no conventional manner in which to use a web browser remotely to monitor and control home automation and security systems.  A skilled artisan, at the time of the invention, would have recognized the problem that such remote monitoring at the time of the invention could only be accomplished via cumbersome telephone-based input and automation systems.

40.     The '097 Patent provides technical solutions to this problem not solved in the prior art.  By using a web browser so that "when a customer connects to their home, their home effectively appears to them as a website, with all devices, security and otherwise, accessible for monitoring and control."  '097 Patent at 2:64-67.

41.     Claim 1 of the '097 Patent recites:

1. A system for remote access of a user premises comprising:

[a] a first hardware processing circuitry running an access browser module;

[b] a second hardware processing circuitry located in a first network; and

[c] a connection gateway that is located in, and is part of a local network of, the user premises;

wherein:

[d] the second hardware processing circuitry is external to the user premises, is accessible via the access browser module, and is configured to communicate on-demand with the connection gateway;

[e] the connection gateway is integrated with or communicatively coupled to one or more networked components of the local network of the user premises; and

[f] the system is configured such that user-input of a Uniform Resource Locator (URL) in accordance with which the first hardware processing circuitry, using the access browser module, accesses an address on the first network, begins a sequence in which the second hardware processing circuitry responsively serves to the first hardware processing circuitry, via the access browser module, information regarding at least one of the one or more networked components of the local network, which information the second hardware processing circuitry obtains from the connection gateway without a direct communicative coupling between the second hardware processing circuitry and the at least one networked component of the local network,

[g] wherein the sequence includes

[g][1] the first hardware processing circuitry transmitting to the second hardware processing circuitry authentication data indicating authority to access the at least one networked component of the local network, the transmission of the authentication data being required for the serving of the information to the first hardware processing circuitry, and wherein:

[g][1][i] the user premises is one of a plurality of user premises;

[g][1][ii] the connection gateway is one of a plurality of connection gateways, each of which is located in, and is part of a respective local network of, a respective one of the plurality of user premises, and to each of which the second hardware processing circuitry is configured to connect; and

[g][2] the sequence further including the second hardware processing circuitry determining which one of the local networks the authentication data indicates authority to access;

[g][3] the sequence further including the second hardware processing circuitry establishing a new communication session between the first

hardware processing circuitry and the connection gateway of the
respective local network that the authentication data indicates authority
to access upon verification of the authentication data, and

[h] wherein the second hardware processing circuitry receives, via the
connection gateway, selected information from at least one of the networked
components of the local network of the user premises, and stores the selected
information in the first network for subsequent review by a user associated
with the user premises, without requiring the user to provide the
authentication data, and

[i] wherein the authority to access the at least one networked component of
the local network by transmitting the authentication data also provides
authority to access and review the previously stored selected information in
the first network via the access browser module.

42.    A person skilled in the art at the time of the invention would have

understood that the system of using an Internet browser; an extranet external to the

user premises and accessible via the Internet browser; a plurality of connection

gateways that are part of the home network; and a communications server located in

the extranet and adapted to communicate on-demand with the connection gateways

was not, at the time of the invention, conventional, well-understood, nor routine.

43.    A person of ordinary skill in the art at the time of the invention would

have understood that the system described in claim 1 of the '097 Patent was not, at

the time of the invention, conventional, well-understood, or routine.

44.    A person skilled in the art at the time of the invention would have

understood that the claims recite steps and structural limitations operating in an

unconventional manner to achieve an improved operation of home security and

automation.

45.     These technological improvements provide greater cost savings and efficiencies in allowing remote monitoring of a home security and automation systems through a web browser.

46.     The novel use and arrangement of the specific system recited in the '097 claims were not well-understood, routine, nor conventional to a person skilled in the relevant field at the time of the inventions.

## ADT

47.     ADT was founded in 1874.

48.     ADT is a wholly-owned subsidiary of ADT Inc.

49.     ADT Inc. is a publicly traded corporation with shares listed on the New York Stock Exchange.

50.     ADT Inc. is a "controlled company" and the majority of its shares of common stock are beneficially owned by funds affiliated with or managed by Apollo Global Management , LLC.

51.     Apollo Global Management, LLC is a publicly traded company and listed on the New York Stock Exchange.

52.     ADT states that it has over seven million customers. https://jobs.adt.com/about-adt

53.     ADT states that it has more than 19,000 team members in more than 200 locations. https://jobs.adt.com/about-adt

54.     ADT states that it has the largest network of security professionals in the United States. https://investor.adt.com/home/default.aspx

55.     ADT claims to be a leading provider of security, automation, and smart home solutions. https://investor.adt.com/home/default.aspx

56.     ADT claims to offer many ways to help protect customers by delivering lifestyle-driven solutions via professionally installed, do-it yourself, mobile, and digital based offerings for residential, small business, and larger commercial businesses. https://investor.adt.com/home/default.aspx

57.     ADT's professional installers use the ADT products to demonstrate them for customers during installation.

58.     ADT tests the ADT products to ensure operability and compatibility.

59.     ADT's security and automation offerings involve the installation and monitoring of security and premises automation systems designed to detect intrusion; control access; sense movement, smoke, fire, carbon monoxide, flooding, temperature, and other environmental conditions and hazards; and address personal emergencies such as injuries, medical emergencies, or incapacitation. https://s22.q4cdn.com/631128414/files/doc_financials/2020/ar/ADT-Inc-10-K-12-31-2019-Final.pdf ("ADT 2019 Annual Report").

60.     With ADT's interactive and smart home solutions, ADT customers can remotely monitor and manage their residential and commercial environments.

Depending on the service plan and type of product installation, customers are able to remotely access information regarding the security of their residential or commercial environment, arm and disarm their security systems, adjust lighting or thermostat levels, monitor and react to defined events, or view real-time video from cameras covering different areas of their premises from web-enabled devices (such as smart phones, laptops, and tablet computers) and a customized web portal. Additionally, ADT's interactive and smart home solutions enable customers to create customized and automated schedules for managing lights, thermostats, appliances, garage doors, cameras, and other connected devices. These systems can also be programmed to perform additional functions such as recording and viewing live video and sending text messages or other alerts based on triggering events or conditions. ADT 2019 Annual Report.

61.    ADT admits that it is extending the concept of security from the physical home or business to personal on-the-go security and safety and cybersecurity. ADT's customers' increasingly mobile and active lifestyles have created new opportunities in the self-monitored DIY products and mobile technology. ADT's technology also allows it to integrate with various third-party connected and wearable devices so that ADT can serve its customers whether they are at home or on-the-go. Additionally, ADT offers personal emergency response system products and services, which are supported by its monitoring centers and

utilize its security monitoring infrastructure to provide customers with solutions helping to sustain independent living and encourage better self-care activities.  ADT 2019 Annual Report.

62.    ADT admits that it is dependent on information technology networks and systems, including Internet and Internet-based or "cloud" computing services, to collect, process, transmit, and store electronic information. ADT 2019 Annual Report.

63.    As of December 31, 2019, ADT operated nine monitoring centers. ADT 2019 Annual Report.

64.    ADT serves its largest multi-site customers from its National Accounts Operation Center ("NAOC") in Irving, Texas.  ADT 2019 Annual Report.

65.    As of December 31, 2019, ADT served its customer base from more than 200 sales and service offices located throughout the U.S. From these locations, ADT's staff of approximately 5,400 installation and service technicians provides security and automation system installations and on-premises service and repair. ADT staffs its sales and service offices to efficiently and effectively make sales calls, install systems, and provide service support based on customer needs and ADT's evaluation of growth opportunities in each market. ADT utilizes third-party subcontract labor when appropriate to assist with these efforts. ADT maintains the relevant and necessary licenses related to the provision of installation of security and

related services in the jurisdictions in which it operates. ADT's objective is to provide a differentiated service experience by providing same-day or next-day service to the majority of its customers  ADT 2019 Annual Report.

66.    ADT admits that technology trends are creating significant change in its industry and that innovation has lowered the barriers to entry for interactive, automation, and smart home solutions. ADT believes a combination of increasing customer interest in lifestyle and business productivity and technology advancements will support the increasing penetration of interactive, automation, and smart home solutions. ADT is focused on extending its leadership position in the traditional residential and commercial security systems markets while also growing its share of the new offerings and expanding growth markets.  ADT 2019 Annual Report.

## THE ACCUSED PRODUCTS

67.    In recent years, ADT has made, sold, used, and employed various systems that permit remote monitoring of a home's security and automation systems through internet web browsers and smartphone applications.  Initially branded as ADT Pulse, these systems have been marketed as ADT Control and ADT Command. In this Complaint, the various ADT systems that permit remote monitoring of a home's security and automation systems through internet web browser and smartphone applications, including ADT Pulse, ADT Control, ADT Command, and

Blue by ADT are referred to as the ADT System or Accused Product. These brands and systems currently coexist. For example, ADT describes the difference between ADT Pulse and ADT Control as:

**What's the difference between ADT Pulse and ADT Control?**   −

Unlike ADT Pulse, ADT Control includes a touchscreen control panel to manage smart home and security equipment at home with one device. ADT Pulse still allows remote control of your security system and smart home devices without the panel while using the Pulse app.

ADT Control is compatible with more smart home devices including Amazon Alexa and video doorbell cameras. You'll be able to create scenes to control your multiple smart home devices at once. Turn off lights, lock doors and arm your security system with a single phrase or control panel touchscreen tap. You can also create rules to automatically enable actions if a sensor is triggered. If your smoke detector senses smoke ADT Command and Control can automatically unlock your smart lock, turn on smart lights and send an emergency notification.

68.     ADT Pulse was released to the public in 2010 and has been updated and improved on a regular basis since then.

69.     ADT derives significant revenue from users who install and subscribe to the ADT System.

70.     The ADT System provides a system for remote access of a plurality of home networks in respective user premises.

# Check on Your Home – Even If You're Away



### Arm & Disarm Your System

Turn your home alarm on or off anywhere using your smartphone.



### See Live Camera Footage

Check on your family from your ADT security camera using your mobile device.



### Lock and Unlock Your Doors

Double-check your home's smart locks and garage doors no matter where you are.



### Control Your Smart Home Gadgets

Connect your smart home devices to check on your home from virtually anywhere.

https://www.adt.com/pulse.

71.     ADT ensures the accuracy of the content it publishes on https://www.adt.com/.

72.     The information ADT publishes on https://www.adt.com/pulse accurately describes the ADT Pulse system.

73.     The information ADT publishes on https://www.adt.com/control accurately describes the ADT Control system.

74.     The information ADT publishes on https://www.adt.com/command accurately describes the ADT Command system.

75.     The ADT System provides an internet web portal and smartphone applications for monitoring home security and automation systems such as through https://www.adt.com/control-login and the ADT Pulse and Control Applications.  In regular operation of the ADT System by ADT, these applications, and the devices on which they are run (collectively, the "ADT System Apps"), provide hardware processing circuitry (first hardware processing circuitry) running an access browser module or an Internet browser hardware device including a processor running an Internet browser (access browser module).

https://portal.adtpulse.com/myhome/19.0.0-89/access/signin.jsp.



76.   The ADT System includes ADT servers that form an extranet that is a network (first network) located external to a user's premises (home) and is accessible via an Internet browser (referred to as "ADT Extranet").  The ADT Extranet includes a plurality of communications servers with hardware processing circuitry (second hardware processing circuitry) (referred to as "ADT Communication Servers").

The first time you sign in to the app, you must select a server.



Depending on where you live, select one of the following:

- US
- Canada

https://www.adt.com/content/dam/adt/downloads/manuals/ADT_Pulse_Mobile_App_User_Guide.pdf

77.    The ADT System includes a plurality of connection gateways, such as the ADT iHub, which can control and monitor devices such as switches, door locks, thermostats, and other devices (referred to as ADT Connection Gateways). The ADT Connection Gateways, such as iHub, include a hardware processor.  At least a subset (a plurality) of the ADT Connection Gateways, in normal operation are located in a user (home) premises and is part of a local (home) network in such premises (referred to as "ADT Home Network").  The ADT Communications Servers are configured to connect to the ADT Connection Gateways.

## 1. What is an ADT Pulse gateway and what do I do if it is offline?

The ADT Pulse gateway is an electronic device that links the security panel and your ADT Pulse lifestyle devices (light switches, door locks, thermostats, cameras, etc.) to your broadband router / modem so the information can be transmitted and received over the Internet. This enables you to remotely check and make changes to the status of your security system and ADT Pulse devices, or to view video via the online portal or smartphone app.



https://www.adt.com/help/faq/equipment/gateway-offline

78.     The ADT Communications Servers are adapted to interconnect on-demand with the ADT Connection Gateways.  The ADT Connection Gateways are accessible by the ADT Communications Servers.   The ADT Communications Servers     are     accessible     via     the     ADT     System     Apps.

## Information

When you touch **Information** on the Settings screen, the Information screen appears.



On this screen, you can view information about:

❑  **Gateway Connect**: Indicates the gateway's remote connection status. If this icon is white, it indicates that the gateway is communicating with the server. If it is red, it indicates that the gateway is not communicating with the server.

https://www.adt.com/content/dam/adt/downloads/manuals/Touch_Screen_User_Guide.pdf

79.     In normal operation of the ADT System, each of the ADT Connection Gateways that is part of the subset of ADT Connection Gateways that are located in a user (home) premises is communicatively coupled to, or integrated with, one or more networked components of the ADT Home Network (for example, devices such as switches, door locks, thermostats, and other devices) in which the respective connection gateway is located.

80. In normal operation of the ADT System, the ADT Communications Server is not communicatively coupleable to the one or more networked components (for example, devices such as switches, door locks, thermostats, and other devices) of the ADT Home Network.

81. In normal operation of the ADT System by ADT, the system is configured to be responsive to the input of a URL, at the ADT System Apps, to access an address on the ADT Extranet, such that the ADT System Apps provide authorization data.  For example, when an ADT System App is used to access the ADT Extranet to monitor or control devices in the ADT Home Network, authorization       data       is       provided       by       the       ADT       System       App.

## Signing In

Each time you use the web portal, you must sign in with your username and password. Depending on your system configuration, the process for setting up and obtaining them differs. To set up your password the first time you sign in, follow the specific directions provided by your system installer and in any emails you receive associated with this process.

After signing in to the web portal the first time, the Terms of Use agreement appears. After reading the agreement, click **I Agree**.

Following acceptance of the Terms of Use agreement, the system might prompt you to complete other set-up steps. When the set-up steps are complete, the web portal launches and displays the Summary tab. See "Overview of the Summary Tab" on page 15 for details about this tab.

https://www.adt.com/content/dam/adt/downloads/manuals/Web_Portal_User_Guide_2.pdf

82. In normal operation of the ADT System by ADT, when the ADT Extranet and an ADT Communications Server are accessed as a result of the input

of the URL at the ADT System Apps, the ADT Communications Server  provides ADT System Apps information regarding at least one of the networked components of the ADT Home Network.   This information was obtained by the ADT Communications Server from an ADT Connection Gateway without a direct coupling between the ADT Communications Server and the networked component.

83.   In normal operation of the ADT System by ADT, when the ADT Extranet and ADT Communications Server are accessed as a result of the input of the URL, the ADT System Apps transmit to an ADT Communications Server the authentication data, which data indicates authority to access (to control or monitor) at least one of the networked components on the ADT Home Network. The ADT Communications Server uses the authorization data to determine which of the ADT Home Networks includes the ADT Connection Gateway indicated by the authorization        data        and        upon        its        verification.

## 1. What is ADT Pulse?

ADT Pulse is ADT's home and business automation system. It combines home security with automation features that let you manage, monitor and modify your home from almost anywhere. You can remotely arm and disarm your home's security system, display video monitoring, control temperature and lights, receive alerts and custom notifications, as well as lock and unlock doors. The interactive home touchscreen is easy to use and you can access ADT Pulse on your mobile phone or tablet device. ADT Pulse is available for residential and business customers.

Password Tips and Tricks
- To avoid login errors, we ask that Pulse users do not use any of the following special characters in your password: % & + • ¥ £ ¢ € Keep in mind that if you use an auto-generated password, you may not be aware it is using one of these characters.
- For security reasons, the app does not work on "rooted" or "jailbroken" phones to help mitigate the impact caused by malware, viruses and spyware. We recommend using https://mobile.adtpulse.com as an alternative to accessing your Pulse system on your mobile device.

https://www.adt.com/help/faq/adt-pulse

84.     In normal operation of the ADT System by ADT, the ADT Communication Server creates a new communications session between itself and the ADT Connection Gateway in the ADT Home Network that was determined to be indicated by the authorization data.  Creating this new communications session also serves to establish a new communication session between the ADT System Apps and the ADT Connection Gateway in the ADT Home Network.  In normal operation of the ADT System, the new communications session is used to at least monitor or control at least one service or networked component in the ADT Home Network.

85.     In normal operation of the ADT System by ADT, after the new communications session is created, the ADT Extranet obtains/receives information contained within the determined ADT Home Network from the ADT Connection Gateway of that ADT Home Network (for example, from one of the networked

components) and provides such information to the ADT System Apps in the form of a webpage. In normal operation of the ADT System by ADT, after the new communications session is created, the ADT Extranet obtains/receives information contained within the determined ADT Home Network from the ADT Connection Gateway of that ADT Home Network (for example, from one of the networked components) and, provided the authentication data transmitted from the ADT System Apps has been verified, saves such information in the ADT System Apps for subsequent review by a user associated with the ADT Home Network without requiring the user to provide the authentication data.



https://www.youtube.com/watch?v=PdoeMsHDxo8&feature=emb_rel_pause



https://www.youtube.com/watch?v=QgnAtvw7D60&feature=emb_rel_pause

## COUNT I – DIRECT PATENT INFRINGEMENT OF THE '526 PATENT

86.     Plaintiffs reallege and incorporate by reference the allegations set forth above, as if set forth verbatim herein.

87.     ADT has directly infringed the '526 Patent in violation of 35 U.S.C. § 271(a) by one or more of the following: (1) making the ADT System (an "Accused Product") which embodies the patented inventions of at least claim 1 of the '526 Patent, by combining all elements of the ADT System as described above, in a manner that meets each limitation of at least claim 1 of the '526 Patent; and (2) using, or putting into service, including through its own use, testing, and demonstration, the ADT System which embodies the patented inventions of at least claim 1 of the

'526 Patent, by operating the ADT System when all elements of such system are combined as described above, thus meeting each limitation of at least claim 1 of the '526 Patent.

88.     ADT's infringing Accused Products include, without limitation, ADT Pulse, ADT Control, ADT Command, Blue by ADT, and other remote security and automation control systems with the same or similar features and functionality that satisfy each element of one or more asserted claims.

89.     The Accused Products, when combined and used as described above, satisfy each and every element of each asserted claim of the '526 Patent either literally or under the doctrine of equivalents.

90.     Defendant's infringing activities are and have been without authority or license under the '526 Patent.

91.     Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

## INDIRECT INFRINGEMENT OF THE '526 PATENT

92.     Plaintiffs realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

93.     As of the filing of this Complaint, Plaintiffs do not have sufficient information to determine whether ADT had knowledge, prior to the filing and service of this Complaint, of the '526 Patent and whether ADT's actions, or the actions of ADT's customers resulting from ADT's advertisements, instructions, advice, and guidance as provided by user manuals and instructions, ADT's website, ADT's installation technicians, ADT's support and help services, and otherwise, directly infringed one or more claims of the '526 Patent.

94.     ADT admits that it reviews third-party intellectual property rights. ADT 2019 Annual Report.

95.     Because ADT reviews third party intellectual property rights, ADT may have become aware of the '526 Patent prior to the filing of this action.

96.     In 2015, ADT received a one-page summary of the Portus patent portfolio, which included the '526 Patent.  ADT was invited to access a data room with infringement claim charts and evidence that ADT was, at the time, infringing the '526 Patent.  At this time, it is not known whether ADT accessed the data room, the infringement claim charts, or evidence of infringement.

97.     In early 2002, Portus's Tim Lindquist communicated with, among others, Peter Ellis and Neal Griffith of ADT Security, which was previously known as Tyco International, a predecessor-in-interest to ADT, concerning Portus's products and the inventions described in the '526 Patent.

98.     Should discovery reveal ADT's knowledge of the '526 Patent and its alleged infringement by ADT or ADT's  access of the information in the data room, Plaintiffs may seek leave of Court to amend their Complaint to allege indirect infringement.

## COUNT II – DIRECT PATENT INFRINGEMENT OF THE '097 PATENT

99.     Plaintiffs reallege and incorporate by reference the allegations set forth above, as if set forth verbatim herein.

100.    ADT has directly infringed the '097 Patent in violation of 35 U.S.C. § 271(a) by one or more of the following: (1) making the ADT System which embodies the patented inventions of at least claim 1 of the '097 Patent, by combining all elements of the ADT System as described above, in a manner that meets each limitation of at least claim 1 of the '097 Patent; and (2) using, or putting into service, including through its own use, testing, and demonstration, the ADT System which embodies the patented inventions of at least claim 1 of the '097 Patent, by operating the ADT System when all elements of such system are combined as described above, thus meeting each limitation of at least claim 1 of the '097 Patent.

101.    ADT's infringing Accused Products include, without limitation, ADT Pulse, ADT Control, ADT Command, Blue by ADT and other remote security and automation control systems with the same or similar features and functionality that satisfy each element of one or more asserted claims.

102.    The Accused Products satisfy each and every element of each asserted claim of the '097 Patent either literally or under the doctrine of equivalents.

103.    Defendant's infringing activities are and have been without authority or license under the '097 Patent.

104.    Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

## INDIRECT INFRINGEMENT OF THE'097 PATENT

105.    Plaintiffs reallege and incorporate by reference the allegations set forth above, as if set forth verbatim herein.

106.    As of the filing of this Complaint, Plaintiffs do not have sufficient information to determine whether ADT had knowledge, prior to the filing and service of this Complaint, of the '097 Patent and whether ADT's actions, or the actions of ADT's customers resulting from ADT's advertisements, instructions, advice, and guidance as provided by user manuals and instructions, ADT's website, ADT's installation technicians, ADT's support and help services, and otherwise, directly infringed one or more claims of the '097 Patent.

107.    ADT admits that it reviews third-party intellectual property rights. ADT 2019 Annual Report.

108.   Because ADT reviews third party intellectual property rights, ADT may have become aware of the '097 Patent prior to the filing of this action.

109.   In 2015, ADT received a one-page summary of the Portus patent portfolio, which included the application that resulted in the '097 Patent.  ADT was invited to access a data room with infringement claim charts and evidence that ADT was, at the time, infringing the '526 Patent, the predecessor to the '097 Patent.  At this time, it is not known whether ADT accessed the data room, the infringement claim charts, or evidence of infringement.

110.   In early 2002, Portus's Tim Lindquist communicated with, among others, Peter Ellis and Neal Griffith of ADT Security, which was previously known as Tyco International, a predecessor-in-interest to ADT, concerning Portus's products and the inventions described in the '526 Patent.

111.   Should discovery reveal ADT's knowledge of the '526 Patent and its alleged infringement or the application resulting in the '097 Patent or ADT's access of the information in the data room, Plaintiffs may seek leave of Court to amend their Complaint to allege indirect infringement.

## **JURY DEMAND**

112.   Plaintiffs hereby demand a trial by jury of all issues so triable pursuant to Fed. R. Civ. P. 38.

## **PRAYER FOR RELIEF**

Plaintiffs respectfully request that the Court find in their favor and against Defendant, and that the Court grant Plaintiffs the following relief:

A.    An adjudication that one or more claims of the '526 and '097 Patents have been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

B.    An accounting and an award to Plaintiffs of damages adequate to compensate Plaintiffs for the Defendant's acts of infringement, together with pre-judgment and post-judgment interest and costs pursuant to 35 U.S.C. § 284;

C.    That this Court declare this to be an exceptional case and award Plaintiff its reasonable attorneys' fees and expenses in accordance with 35 U.S.C. § 285; and

D.    Any further relief that this Court deems just and proper.

Respectfully submitted this 2nd day of July, 2020.

By: *Kevin S. Kudlac*
        Kevin S. Kudlac
        State Bar No. 00790089
        kevin@connorkudlaclee.com
        Jennifer Tatum Lee
        State Bar No. 24046950
        jennifer@connorkudlaclee.com
        Cabrach J. Connor
        State Bar No. 24036390

cab@connorkudlaclee.com
Christopher E. Hanba
State Bar No. (Michigan) P81732
chris@connorkudlaclee.com
Joshua G. Jones
State Bar No. 24065517
josh@connorkudlaclee.com

**CONNOR KUDLAC LEE PLLC**
609 Castle Ridge Road, Suite 450
Austin, Texas 78746
512.777.1254 Telephone
888.387.1134 Facsimile

**ATTORNEYS FOR PLAINTIFF**